**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: June 8 2012

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 12-30181 |
| | ) | |
| Darla Weltlich, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

**MEMORANDUM OF DECISION REGARDING MOTION FOR RELIEF FROM STAY**

    This case came before the court for final evidentiary hearing on a Motion for Relief from Stay ("Motion") [Doc. # 15] filed by Creditor Edward B. Weltlich and Debtor's opposition [Doc. # 25]. Edward Weltlich is Debtor's ex-husband. He seeks relief from the automatic stay in order to proceed under orders relating to the parties' marital residence that have been entered by the Domestic Relations Division of the Common Pleas Court of Huron County, Ohio.

    The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine motions to modify the automatic stay are core proceedings that this court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(G). Having considered the memoranda submitted by counsel in support of their respective positions, the evidentiary record, and the arguments of counsel, for the following reasons, the Motion will be granted only to the extent that the continuation of the automatic

stay will be conditioned as set forth in this opinion.

## BACKGROUND

On October 28, 2008, an Agreed Judgment Entry of Divorce ("divorce decree") was entered by the Common Pleas Court of Huron County, Ohio, granting Debtor and Edward Weltlich ("Weltlich") a divorce. The dispute underlying Weltlich's Motion arises out of contentious proceedings relating to the parties' divorce, and in particular, to treatment of the marital home and its associated mortgage debt.

The parties' marital home is, and always has been, titled in Debtor's name only. [Joint Ex. A, ¶ 2]. Pursuant to the divorce decree, Debtor was permitted to retain the home. [*Id.* at ¶ 3 & Ex. E attached thereto, ¶ 8]. Weltlich was required to, and did, make the mortgage and home equity line of credit payments through February 2009. [*Id.*]. Thereafter, the divorce decree requires Debtor to make those payments, to pay the real estate taxes, and to hold Weltlich harmless as to the mortgage debt, with respect to which he is a co-debtor. [*See id.*]. The divorce decree also required Debtor to refinance the mortgage debt at the end of February 2009, in order to extinguish Weltlich's liability on the mortgage or, if not refinanced, the home was to be listed immediately and sold at the best price obtainable, with the state court reserving jurisdiction over the terms and conditions of the sale. [*Id.*].

One year later, Debtor had not refinanced or sold the marital home. She had not made the payments on the first and second mortgage as required under the divorce decree beginning in March 2009. Weltlich therefore made the first mortgage payments through July 2009 and the second mortgage payments through June 2009. On October 26, 2009, Debtor was held in contempt of court and ordered to serve ten days in the Huron County jail, which order was suspended on condition that she deliver to Weltlich proof each month that the mortgage payment and home equity loan payment were made, that she reimburse Weltlich from the proceeds of the sale of the marital home for the payments that he had made, and that she pay Weltlich's attorney fees in the amount of $500. [Joint Ex. A and Exs. C and D attached thereto].

Debtor eventually paid off the home equity loan. However, by December 2010, she still had not refinanced the first mortgage nor had she sold the marital home. On December 7, 2010, the state court entered an agreed order requiring Debtor to refinance the mortgage by December 17, 2010, and from funds obtained by refinancing, pay Weltlich $3,903.93 as reimbursement for the mortgage payments made by him in 2009. [Joint Ex. A and Ex. B attached thereto, ¶ 1]. If Debtor failed to refinance, the agreed order required her to serve three days of the ten day jail term previously suspended. [*Id.* at ¶ 3]. Debtor had apparently listed the marital home for sale, and the agreed order required her to lower the asking price to

$209,000.00 and then reduce the price by $10,000.00 each month thereafter. [*Id.* at ¶ 5]. Finally, the agreed order requires her to pay from the proceeds of the sale of the marital home Weltlich's additional attorney fees in the amount of $1,000.00 and to comply with the remaining provisions of the court's October 26, 2009, order. [*Id,* at ¶¶ 4-7]. Debtor did not refinance as ordered and did, in fact, serve three days in the county jail.

On May 19, 2011, Debtor still had not refinanced or sold the marital home, and a receiver was appointed for the purpose of selling the property in compliance with the state court's previous orders. [Joint Ex. A and Ex. A attached thereto]. The receiver's fees are to be paid from the proceeds of the sale. [*Id.*]. The receiver listed the property with a realtor and had received an offer in the amount of $130,000.00, which, by its terms, expired before Debtor filed her bankruptcy petition. [Joint Ex. A, ¶ 5].

On December 23, 2011, Debtor was involved in an automobile accident in which she incurred serious injuries. Although previously employed as a bartender, Debtor is currently unemployed and recovering from her injuries. She has no income but receives food stamps and is otherwise living off the largess of her mother, who is providing funds to make the mortgage payments on Debtor's home. Although Weltlich, as a co-debtor, has received several notices during 2011 and 2012 that the mortgage payment was past due and believes that his credit score has been negatively affected as a result, the testimony and evidence at the hearing indicates that, while generally made after the first of the month when the payment is due, all of Debtor's mortgage payments during 2011 and through March 2012 were made within the note's fifteen-day grace period and, as a result, that there has been no negative credit reporting relating to the mortgage debt. [*See* Debtor Exs. 2 & 5]. As of March 30, 2012, the principal balance owed on the mortgage was $88,885.74. [Debtor Ex. 3].

Debtor filed her Chapter 13 petition on January 19, 2012. Her bankruptcy Schedule E shows an unsecured priority claim in the amount of $16,034.72 owed to the Huron County Treasurer for unpaid real estate taxes on the marital home, and Schedule F shows nonpriority unsecured debt in the total amount of $53,316.93, which includes $42,717.29 in medical expenses as well as $4,500.00 owed to Weltlich. On February 2, 2012, she filed a Chapter 13 plan proposing to pay to the trustee $0.01 per month and which is otherwise to be funded by the sale of the marital home. Debtor's originally proposed plan provided that she list the property for sale and sell the property within sixty months from the date of confirmation of the plan for reasonable fair market value, which the plan defines as "not less than $209,000.00, unless debtor with approval of trustee permit[s] a sale for a lesser amount." [Doc. # 13, ¶ 13]. It further provides:

> All creditors shall be paid 100% of their allowed claims under the plan provided the sale garners a sufficient sum to pay debtor her $20,200.00 homestead exemption along with all such other allowed debt claims. Debtor shall receive her homestead exemption in the amount of $20,200.00 in the event of any sale at any price. Debtor shall continue to live in her home as her residence and pay all insurance and mortgage debt as due monthly. Debtor may seek refinancing of the mortgage debt provided that all creditors would be paid at least that as proposed to be paid hereunder. The Huron County Court of Common Pleas shall be enjoined from any further proceedings against debtor seeking to jail or punish her for contempt and causing a judicially ordered sale of the real property through a receiver appointed by the Common Pleas Court who is seeking to sell the debtor's home for $130,000.00 well below the current appraisal of Huron County at $249,300.00.

[*Id.*].

After the first meeting of creditors, on March 19, 2012, Debtor amended her plan to require her to sell the marital home within an eighteen rather than sixty month period from the date of confirmation ("Plan"). [Doc. # 22, ¶ 13]. The Plan also provides that Debtor be paid from the sale proceeds her $20,200.00 homestead exemption but adds "provided the sale garners a sufficient sum that permits its payment." Other provisions of the Plan remain essentially unchanged, included a $0.01 monthly plan payment.

At the hearing on the Motion, Debtor testified that she believed the fair market value of the marital home is $209,000.00. During the last week of March 2012, she listed the home with a realtor, other than the realtor used by the receiver, with an asking price of $209,000.00. Debtor testified that, at least at this time, she would not accept an offer to purchase the property for less than $209,000.00. Debtor also testified that the property is insured. Debtor's monthly mortgage payment includes insurance but does not include property taxes. Debtor's annual property tax obligation is approximately $3,800.00. In addition to unpaid property taxes that became due prepetition, property taxes that were due post petition in February 2012 have not been paid.

Since the hearing on the Motion, the court has conducted a hearing on confirmation of Debtor's proposed amended Plan. Pursuant to the court's oral findings at the hearing that Debtor did not file the Plan in good faith, the court denied confirmation of the Plan but granted Debtor leave to file another proposed amended plan by May 25, 2012, and scheduled a further confirmation hearing to be held on June 26, 2012.

## LAW AND ANALYSIS

Section 362 of the Bankruptcy Code provides that a bankruptcy petition "operates as a stay, applicable to all entities," of the continuation of a judicial action or proceeding against the debtor, the

4

enforcement against the debtor of a judgment obtained before the commencement of the bankruptcy case, and any act to exercise control over property of the estate or to recover a claim against the debtor that arose before commencement of the bankruptcy case. 11 U.S.C. § 362(a)(1), (2), (3) and (6). Weltlich moves for relief from the automatic stay in order to proceed under the state court orders relating to the parties' marital home, including the order appointing a receiver to sell the home.

Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay under subsection (a) of this section . . . for cause. . . ." Because the Code does not define "cause" under § 362(d)(1), "courts must determine whether discretionary relief is appropriate on a case-by-case basis." *Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 737 (6th Cir. 1994). Courts have recognized that a debtor's lack of good faith may constitute "cause" for granting relief under § 362(d)(1). *See id.* at 737-38 (citing cases and concluding that a debtor's lack of good faith in filing Chapter 11 petition was cause for lifting the automatic stay); *In re Ashton*, 63 B.R. 244, 247 (Bankr. D.N.D. 1986) (stating that "'cause' for relief from stay may include the element of bad faith on the part of a Chapter 13 plan proponent"). Congress set forth burdens of proof applicable to a motion for relief from stay in 11 U.S.C. § 362(g). While the party seeking relief bears the initial burden of making a prima facie case of "cause" for relief under § 362(d)(1), the ultimate burden of persuasion rests with the party opposing relief. *In re Cambridge Woodbridge Apts., L.L.C.*, 292 B.R. 832, 841 (Bankr. N.D. Ohio 2003).

Initially, the court finds that the doctrine of lis pendens does not, as argued by Weltlich, "compel" the court to lift the automatic stay. Under Ohio law, "lis pendens is a legal doctrine – literally 'a pending lawsuit.'" It simply means that "the filing of a lawsuit concerning specific property gives notice to others of the claim alleged in the lawsuit and that a purchaser of the property may take the property subject to the outcome of the lawsuit." Nevertheless, as discussed below, Weltlich has made a prima facie showing of cause for relief, and Debtor has failed to refute this showing.

In this case, as indicated above, the court has found that Debtor did not file the proposed Plan in good faith. In so finding, the court considered Debtor's testimony at the hearing on the instant Motion and concluded that she has little, if any, interest in actually selling the marital residence, which sale, of course, is the sole source of funding of her proposed Plan. The parties' ongoing fight in the divorce relating to the marital property and its associated debt, which even resulted in her spending time in jail because she would not follow the state court's orders to refinance or sell the property, underscores Debtor's resistance in selling

5

the property.

Debtor's proposed Plan and her testimony regarding its implementation further demonstrate her lack of a genuine interest in selling the property and in paying her unsecured creditors. Debtor testified that she does not, at this time, intend to sell the property for less than her asking price of $209,000.00. The Plan provides for no trigger as to when the asking price would be lowered and no meaningful Plan contribution by her during the pendency of a sale. Rather, the sale process is entirely open-ended and for Debtor's benefit only, leaving all risk to Weltlich and her unsecured creditors.

Although Debtor indicated that her purpose in proposing her Plan was to enable her to sell the marital residence at its fair market value, which she testified is far greater than the price tag required by the state court orders, and to preserve her exemption in the home while generating funds to pay her unsecured creditors in full, the court is not so persuaded based on her plan as proposed at the time of the final hearing on the Motion. Filing a Chapter 7 petition, for which she appears eligible, would have accomplished the same goals by putting the sale of the property in the hands of a neutral trustee, who would not have been subject to the state court orders. The proceeds of any sale would have been applied first to payment of the debt secured by the property and to Debtor with respect to her exemption and then to unsecured creditors. However, Debtor would then lose control of the sale process. Her insistence on maintaining such control under the circumstances of this case and the court's assessment of Debtor's testimony leads it to believe that the plan in effect at the hearing date simply represents Debtor's attempt to use this court as an alternative jurisdiction to the state domestic relations court and her ongoing attempt to prevent Weltlich from forcing her to sell the marital residence, and does not represent a good faith attempt to fund a plan for repayment of her unsecured debt.

For the foregoing reasons, the court concludes that Weltlich is entitled to relief from the automatic stay. However, the form of relief that may be afforded is not limited to termination of the stay as requested in the Motion. Rather, § 362(d) provides that relief may be granted by "terminating, annulling, modifying, or conditioning" the stay, the effect of which is to permit the court to fashion the relief to the particular circumstances of the case. *Eastern Refractories Co. v. Forty Eight Insulations Inc.,* 157 F.3d 169, 172 (2nd Cir. 1998) (stating that bankruptcy courts have the power "to modify or condition an automatic stay so as to fashion the appropriate scope of relief"); *Browning v. Navarro,* 743 F.2d 1069, 1074 and 1084 (5th Cir. 1984) (stating that the court has authority and discretion to fashion relief according to the needs in a particular bankruptcy proceeding); *In re Hope Plantation Group, LLC*, 393 B.R. 98, 104 (Bankr. D.S.C.

2007) (holding that the court "has discretion to fashion appropriate relief and is not necessarily required to terminate the stay outright").

In light of this court's prior order granting Debtor leave to file another proposed amended plan that addresses the court's concerns as set forth above and at the confirmation hearing, the court finds the following relief appropriate in this case. Continuation of the automatic stay will be conditioned upon Debtor (1) making timely all monthly mortgage payments and providing proof thereof to Weltlich, (2) paying timely all post-petition property taxes and filing evidence of payment with the court, (3) proposing a confirmable Chapter 13 plan within the time permitted by the court, and (4) continuing to list the marital residence for sale with a realtor and filing the listing agreement with the court. Debtor's failure to satisfy these conditions will result in final termination of the stay.

The reason the court is conditioning continuation of the automatic stay instead of terminating it is because the record presently reflects equity in the real property from which creditors other than Weltlich can potentially benefit. Furthermore, it is unlikely that they will be paid outside of a bankruptcy proceeding. And the court finds that the conditions set forth above adequately protect Weltlich's exposure to the risk of liability on the mortgage debt; his risk arises through either the property value falling toward the mortgage debt amount or increasing liabilities against the property of equal or greater priority to the mortgage debt, such as through missed mortgage payments, the accompanying increased foreclosure risk or unpaid property taxes that prime the mortgage lien. There is no showing that the value of the residence is decreasing during the case. *See* 11 U.S.C. § 362(g)(party seeking relief has burden of proof on Debtor's equity in property). But post-petition real property taxes have not been paid and Debtor is consistently late in making the mortgage payments, incorrectly conflating the payment due date with the grace period under the note. On the other hand, Debtor's other general unsecured creditors are interested in achieving maximum value of the property through which to pay their claims, which interests are understandably of no concern in the state court proceedings. The conditions set forth above adequately protect Weltlich's interests by addressing and minimizing his risk[1] while affording Debtor the opportunity to do what she says she is here to do: capturing the equity in the property through this bankruptcy proceeding to pay her unsecured creditors, including Weltlich, in full accordance with the Chapter 13 process.

The court will enter a separate order in accordance with this Memorandum of Decision.

---

[1] Weltlich is also protected in this proceeding by the statutory co-debtor stay of 11 U.S.C. § 1301, which remains in effect.

7